## Wytheville.

SOUTHGATE JONES AND CHARLES D. CUNNINGHAM v. VIRGINIA TRUST COMPANY, AND OTHERS.

June 11, 1925.

Absent, Prentis, P.

Argued before Judge Chichester took his seat.

1. EXECUTORS AND ADMINISTRATORS—*Compensation—Statutory Origin—Amount of Compensation.*—The right of a fiduciary to receive compensation for administering an estate is of purely statutory origin. The statute (section 5425 of the Code of 1919) fixes no certain compensation but provide that a fiduciary shall be entitled to a reasonable compensation from a very early period. A commission of five per cent upon receipts has been the measure of compensation allowed a fiduciary, except under peculiar circumstances, when the commission or compensation has been increased or reduced as the exigencies demanded.

2. EXECUTORS AND ADMINISTRATORS—*Commissions—Specific Legacies—Case at Bar.*—In the instant case, the chief question at issue was whether executors were entitled to receive five per cent commission upon the appraised value of a large number of shares of stock belonging to testator distributed and to be distributed in kind to the legatees. As there is neither reason nor propriety in charging a fiduciary with the value of specific legacies, if the legacies are specific, then the executors are not entitled to commissions.

3. LEGACIES AND DEVISES—*Specific Legacies—When Legacies are Specific.*—In order for a legacy to be specific, the testator must bequeath a specific thing, so distinguishable from his other property that delivery may be made to the legatee, without the requirement of any separation. Legacies are specific when testator intends legatee to have the identical thing bequeathed.

4. LEGACIES AND DEVISES—*Specific Legacies—Bequests of Shares of Stock—Delivery in Kind.*—A testator made a number of bequests of a specified number of shares of stock to certain of his relatives. A careful reading of the will failed to disclose any intent upon the testator's part to bequeath any specific share of stock.

*Held:* That while the legacies were not, strictly speaking, specific legacies, they were such legacies as were intended by testator to be delivered in kind, as they were, in fact, delivered.

5. EXECUTORS AND ADMINISTRATORS—*Commissions—Property Delivered in Kind to Legatees.*—A personal representative is not entitled to commissions on the appraised value of property delivered in kind to legatees unless there are some peculiar circumstances entitling him to such commissions.

6. EXECUTORS AND ADMINISTRATORS—*Commissions—Property Delivered in Kind to Legatees.*—To allow a fiduciary in every case a commission of five per cent on legacies delivered in kind might place upon the legatee too onerous a burden; and in many cases where the estate is large and easy of settlement, a commission of five per cent is out of proportion to the actual work required or performed. On the other hand, a rule disallowing all commissions in such cases is too restricted to meet the requirements of modern business.

7. FIDUCIARY—*Commissions—Amount of Commissions—Section 5425 of the Code of 1919.*—Inasmuch as the statute (5425 of the Code of 1919) fails to lay down a hard and fast rule, as to the amount of compensation to allow a fiduciary, the Supreme Court of Appeals will not do so. A fair construction of the statute seems to be that if the fiduciary sells property, of whatever kind, he is generally entitled to a commission of five per cent on the receipts. If he has the right to sell, but those entitled to the proceeds of sale prefer to take the property in kind, then he is generally entitled to receive five per cent commission upon the appraised value of the property. If he is not entitled to sell the property, but must deliver in kind (except in the case of a specific legacy), he is only entitled to a reasonable compensation to be fixed by the commissioner, or court, upon the proper proof of the expense incurred, the risk taken, and the services rendered, in connection with the property so delivered to those entitled thereto.

8. EXECUTORS AND ADMINISTRATORS—*Dividends on Shares of Stock Delivered in Kind—Case at Bar.*—While, considering the circumstances under which the legatees in the instant case received the shares of stock, delivered to them at a later date than was anticipated, the dividend paid before actual transfer of the stock might very well have been allowed to the legatees, instead of debiting the amount of dividend as improperly paid, as was done, in the individual legatee accounts, yet this was technically correct, and the court did not err in refusing to overrule the commissioner of accounts.

9. EXECUTORS AND ADMINISTRATORS—*Interest on Dividends of Stock Before Transfer—Case at Bar.*—Interest on dividends of stock paid before transfer of the stock to the legatees was properly charged as due the executors and not the estate in the individual account with the lega-

tées, but in the subsequent settlement of the accounts with the estate, the executors should charge themselves, unless the aggregate items in the general account already covered the items in the individual accounts.

10. Executors and Administrators—*Commission*  *Shares of Stock Transferred to Legatees in Kind—Case at Bar.*—In the instant case, a testator bequeathed to each of a number of legatees a certain specified number of shares of stock in a corporation. The main question at issue was the right of the executors to receive five per cent commissions upon the appraised value of this stock distributed and to be distributed in kind to the legatees.

*Held:* That a decree allowing the executors five per cent of the appraised value of the stock distributed in kind would be reversed; and the cause remanded to the trial court to ascertain what would be a reasonable compensation to the executors for the expense incurred, the risk taken, and the services rendered, in connection with the receipt and distribution of the shares of stock so delivered to the parties entitled thereto.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for defendants. Plaintiffs appeal.

*Affirmed in part; reversed in part.*

The opinion states the case.

*King, Sapp & King* and *Scott & Buchanan*, for the appellants.

*John H. Bocock* and *T. C. Gordon*, for the appellees.

Campbell, J., delivered the opinion of the court.

This suit was brought in the Law and Equity Court of the city of Richmond by appellants to surcharge and falsify the account of Virginia Trust Company, D. J. Holcombe and Decatur Jones, executors of the will of William Henry Jones, deceased.

The testator, a citizen of Pittsylvania county, Vir-

ginia, on May 22, 1920, made his last will and testament, disposing of his large personal estate of the value of $394,543.96, the same consisting in part of cash, stocks and bonds. On August 6, 1920, testator departed this life, and on August 17th his will was admitted to probate.

The appellants are the residuary legatees of William Henry Jones, and the main contention made by them in their bill of complaint is that the commissioner appointed to settle the executorial account allowed excessive commissions to executors. The commission complained of consists of five per cent on the appraised value of nine hundred and fifty shares of Riverside and Dan River Cotton Mills stock.

These stocks were appraised at the sum of $245,000.00. By his will the testator disposed of his personal property as follows:

To his executors, in trust for his brother, Dorsey Jones, for his life, with remainder to Decatur and Southgate Jones or to the survivor of them, he gave 150 shares of said preferred stock;

To his sister, Emmy Jones, he gave 150 shares of said common stock and $5,000.00 in cash;

To his nephew, D. J. Holcombe, and his wife, Annie, he gave, respectively, 150 shares and fifty shares of said common stock;

To his nephew, Decatur Jones, and Doris Fleming he gave, respectively, 150 shares and 100 shares of said common stock;

To his niece, Hattie Holcombe, and to his sister, Mrs. R. R. King, he gave respectively 150 shares and fifty shares of said common stock;

To Mrs. B. A. Cunningham he gave fifty shares of said common stock;

To Mrs. Kate Morehead he gave fifty shares of said common stock;

To Harriett James he gave fifty shares of said preferred stock;

To Victor C. McAdoo and several others he gave pecuniary legacies amounting to $41,050.00.

The residue of his estate he disposed of as follows:

"All the rest and residue of my estate I direct to be divided equally between my nephews, D. J. Holcombe, Decatur Jones, Southgate Jones, and Chas. D. Cunningham."

The indebtedness of the estate was insignificant. The amount of cash deposited in banks totaled the sum of $56,471.42.

Upon the qualification of the trust company as executor, it took possession of all the stocks and bonds of the testator and placed same in its vaults for safe-keeping.

After settling the indebtedness of the estate and paying the pecuniary legacies, the executors, in conformity with the directions of the will, distributed the nine hundred and fifty shares of stock in kind to the legatees entitled thereto. This constitutes all the acts done in connection with the shares of stock distributed.

The stocks and bonds held by the executors, not yet distributed, are of the appraised value of $102,675.00.

The main question, as stated, is the right of the executors to receive five per cent commissions upon the appraised value of the stock distributed and to be distributed in kind to the legatees.

[1] The right of a fiduciary to receive compensation for administering an estate is of purely statutory origin. The law fixes no certain compensation. The statute under which a fiduciary is allowed expenses is section 5425, Code 1919, which reads as follows:

"The commissioner in stating and settling the account shall allow the fiduciary any reasonable ex-

penses incurred by him as such, and also, except in cases where it is otherwise provided, a reasonable compensation in the form of commissions (on receipts) or otherwise."

From a very early period, beginning with the case of *Granberry* v. *Granberry*, 1 Wash. (1 Va.) 246, 1 Am. Dec. 455, to the recent case of *Williams* v. *Bond*, 120 Va. 686, 91 S. E. 627, a commission of five per cent upon receipts has been the measure of compensation allowed a fiduciary, except under peculiar circumstances, when the commission or compensation has been increased or reduced as the exigencies demanded. The cases on the question of compensation to fiduciaries where distribution of the estate is made in kind are not altogether in harmony.

In *Claycomb's Legatees* v. *Claycomb's Executor*, 10 Gratt. (51 Va.) 589, the question involved "was as to the right of the executor to a commission of five per cent allowed him by the commissioners, on the appraised value of the slaves, divided in kind among the legatees." Judge Moncure, delivering the opinion of the court, said: "We are of the opinion that the executor was not entitled to commission on the appraised value of the slaves; and that the court below erred in sustaining his claim for the same. It was not necessary to sell any of the slaves for the payment of debts, legacies or expenses of administration. The executor was not authorized by law or by will to sell, and did not sell, any of them. They were directed by the will to be divided in kind among the residuary legatees, and they were so divided accordingly. There was no necessity, and no propriety, in debiting and crediting their appraised value in the executorial account."

In the report of this case it does not appear what was the precise language employed in the will; whether or

not the slaves mentioned were bequeathed as specific or general legacies.

In *Gregory* v. *Parker*, 87 Va. 451, 12 S. E. 801, the pertinent facts were as follows: "The first assignment of error is the giving of said Joseph A. Parker, committee, commissions at five per centum on the $10,000.00 United States registered bond—the item of $500.00—when it is contended his commissions, in this particular, should have been confined to five per cent upon the collections of interest upon the said bond. We are of opinion that this assignment of error is well taken." Proceeding to state the reasons upon which the rule in question was based, continuing, the court said: "The United States registered bond was not due and payable, nor was it collectible of the Government. It was not perishable, and neither debts nor other necessities of Mrs. Gregory's large estate in the hands of her committee required the sale or conversion of the said bond into money; and, in fact, there was no change in the security or investment whatever. The custody of the bond was attended with no risk or trouble, and in case of destruction, being a registered bond in her name, it could have been reissued, at cost of her estate, and there were safe depositories in Norfolk and Portsmouth, accustomed to store valuables, in which the bond could be (and doubtless was) stored at the expense of Mrs. Gregory's estate. The only apparent reason for the debiting and crediting of the face value of the bond in the committee's account, where it is made to appear for the purpose, was to lessen the corpus and to subject it to the charge of $500.00. The committee held the said United States registered bond, upon which he could only collect the interest, just as he held his ward's leasehold property, to collect the rents thereof, and as the executor in *Clay-*

*comb's Legatees* v. *Claycomb's Executor,* 10 Gratt. (51 Va.) 589, held slaves, upon the appraised value of which he was denied commissions. In that case Judge Moncure points the distinction when he says: 'It was not necessary to sell any of the slaves for the payment of debts, legacies, or expenses of administration. The executor was not authorized by law, or by the will, to sell, and did not sell any of them. * * There was no necessity and no propriety in debiting and crediting their appraised value in the executorial account.' Our statute provides that executors and administrators may be allowed such recompense for their personal trouble as the court in passing their accounts shall judge reasonable; but that recompense has generally, if not always, been measured by a commission upon actual receipts; and such commission has generally been five per cent upon the receipts; which was considered adequate even in a case in which the testator by his will directed his executors to be handsomely paid. *Waddy's Ex'or* v. *Hawkins' Adm'r,* 4 Leigh (31 Va.) 458. In some cases a larger commission has been allowed under peculiar circumstances, 2 Rob. P., 370; Lomax on Executors, 329. 'In this case there are no peculiar circumstances to require extra compensation. The estate was unembarrassed, its transactions few and simple, and its administration very easy.' The committee did nothing to change the security or investment; and in the absence of any necessity for sale or conversion of the United States registered bond, had he sold or converted it into money, he would have been refused commissions upon the face value of the bond. (Minor's Institutes, volume IV, part II, 1372-1373, and authorities cited.)"

In a note to section 5425 it is said: "Commissions are not to be allowed to the fiduciary upon the value of

property belonging to the estate, and finally turned over to him in kind, unless when it was perishable, or was such property as the fiduciary might properly have sold, or bonds which he might have collected but did not, and with consent of *cestui que trust* paid over to him in kind as so much money." *Bank of Virginia v. Craig*, 6 Leigh (33 Va.) 437; *Farneyhough's Ex'ors v. Dickerson*, 2 Rob. (41 Va.) 582; *Claycomb's Legatees v. Claycomb's Ex'or*, 10 Gratt. (51 Va.) 589; *Granberry's Ex'or v. Granberry*, 1 Wash. (1 Va.) 249, 1 Am. Dec. 455; 4 Minor's Inst. (3d ed.) 1488.

In *Darling v. Cumming*, 111 Va. 637, 69 S. E. 940, 941, it is held that an executor is entitled to five per cent commissions upon the gross receipts coming into his hands, under the provision of the will of testator, which is as follows: "I hereby direct that in the settlement of my son's accounts, both as executor and trustee of this my will, he be allowed all reasonable expenses, including a commission of five per centum on the gross receipts." In reversing the decree of the trial court which refused to allow the commissions, Judge Harrison said: "It is unnecessary to cite authorities in support of the contention that the commissions allowed by the will are no more than the law would have sanctioned in this case."

In *Allen's Executrix v. Virginia Trust Co.*, 116 Va. 319, 82 S. E. 104, the question involved turned upon an exception to the report of the commissioner denying the right of the executrix to receive a commission on the assessed value of stocks and bonds, which were distributed in kind to the parties entitled thereto. Judge Keith, delivering the opinion of the court, said: "The court overruled the first exception and maintained the right of the executrix to a commission of five per cent on the stocks and bonds distributed in kind; and in this we think there was no error."

It is to be observed that this pronouncement is made without any reference to the holdings of the prior cases on the subject. Just what language appears in the will of testator is not disclosed in the case. Whether the executrix had the right to sell is not shown.

In *Williams* v. *Bond*, 120 Va. 637, 91 S. E. 627, Judge Kelly held that an executor who had turned over to himself as trustee bank stock of the value of $22,680.00, and had paid himself as commission thereon the sum of $462.60, being five per cent on the first $300.00 thereof, and two per cent on the residue, was, under a proper interpretation of the will, entitled to such commissions.

In this case, however, the precise question under consideration in the instant case did not arise, the decision being based upon a proper construction of the will of testator.

In *Bliss* v. *Spencer*, 125 Va. 60, 99 S. E. 593, 601 (5 A. L. R. 619), in passing upon the question of the right of the fiduciary to receive a commission upon stock converted into money, Judge Sims said: "The appellee invokes the rule applied in the case of *Gregory* v. *Parker*, 87 Va. 451, 12 S. E. 801, and the authorities therein cited, against the allowance of any commissions to appellant as administrator   *   *   *   on the twenty shares of Farmville mill stock, on the ground that the administrator had no authority to convert that stock into money, since it was not necessary to do so to pay debts of such estate and that he did not in fact convert it into money, but retained it in kind and distributed it in kind between himself and his ward as distributees or devisees of that estate.

"The rule invoked is well established, and is a sound and just rule in cases to which it is applicable. It does not permit of commissions being allowed to fiduciaries on unconverted assets which are distributed in kind or

which should have been so distributed, except under peculiar circumstances." See *Allen's Ex'x* v. *Va. Trust Co.*, 116 Va. 319, 82 S. E. 104; *Darling* v. *Cumming*, 111 Va. 637, 69 S. E. 940.

[2] It is contended by appellants that, inasmuch as the shares of stock bequeathed were in the actual possession of the testator at the time he wrote his will, and so remained until his decease, that they should be dealt with and treated as if they were specific legacies. As there is neither reason nor propriety in charging a fiduciary with the value of specific legacies, it must be conceded that if the legacies are specific then the executors are not entitled to commissions.

In 24 C. J., section 2406, the rule is thus stated: "The personal representative is not entitled to a commission on a specific legacy, even though such legacy consists of stocks, bonds, or other securities, which are usually regarded in the business world as practically the equivalent of money." Citing *Claycomb's Legatees* v. *Claycomb's Ex'or*, 10 Gratt. (51 Va.) 589.

[3] In order for a legacy to be specific, the testator must bequeath a specific thing, so distinguishable from his other property that delivery may be made to the legatee, without the requirement of any separation. "Legacies are specific when testator intends the legatee to have the identical thing bequeathed." *Hood* v. *Haden*, 82 Va. 588.

[4-6] A careful reading of the will of the testator fails to disclose any intent upon his part to bequeath a specific share of stock. While we are of opinion that the legacies are not, strictly speaking, specific legacies, we are of opinion that they were such legacies as were intended by testator to be delivered in kind, as they were, in fact, delivered. In the cases cited, *supra*, holding that a fiduciary was entitled to commissions

on the appraised value of the property, though delivered in kind to the legatees, a careful reading of those decisions discloses the fact that in each case there was "some peculiar circumstance" upon which the decisions turned. In *Darling* v. *Cumming, supra,* it was held that it was the manifest intention of the testator to charge the estate with the payment of a commission of five per cent upon the gross receipts thereof. In *Allen's Ex'or* v. *Virginia Trust Co., supra,* the court held that the widow was entitled to commissions upon the gross value of the personal estate coming into her hands though consisting of stocks and bonds, which, instead of selling, she delivered in kind to those entitled thereto. In *Williams* v. *Bond, supra,* the right of the executor to receive commissions depended upon an interpretation of the will of testator.

It is to be observed that in this case the claim that the executor was entitled to the full five per cent commission is expressly denied by the court. In the enactment of section 5425, the language employed leaves no room for doubt that it was the intention of the legislature to provide a "reasonable compensation" only to those charged with the administration of a decedent's estate. That the compensation is not fixed in the statute is indicative of the fact that the lawmakers had in mind that what would be a reasonable commission in one case would be unreasonable in another case. In the statute, and in the adjudicated cases cited, it will be noted that wherever a "commission" is allowed, it is upon "receipts."

In reviewing the cases which hold that a fiduciary is not entitled to any compensation whatever where the property bequeathed (though not specific) is delivered in kind, we think the rule laid down is too restricted to meet the requirements of modern business. On the

other hand, in view of the fact that the bulk of many large estates is composed of stocks and bonds, which are preferable to money, we are of opinion that the rule laid down in *Allen's Ex'or* v. *Va. Trust Co.*, *supra*, is too liberal.

To allow a fiduciary, in every case, a commission of five per cent may place upon the legatee too onerous a burden. To illustrate: A is the owner of 700 shares of stock of the "B" Corporation; he bequeaths 600 shares of the stock to his nephew; the residue of his estate he wills to his niece. In the appraisement, the value of the stock is fixed at $60,000.00, and this amount the fiduciary charges himself with. There being cash sufficient to discharge the indebtedness of the estate, the stock is delivered to the legatee in kind, but the estate is charged with $3,000.00 commissions. On the day the stock is delivered and after settlement of the estate, "B" Corporation becomes insolvent and the stock is worthless. It would not be just to allow the commission.

Then, too, in many cases where the estate is large and easy of settlement, a commission of five per cent is out of proportion to the actual work required or performed.

[7] Inasmuch as the statute fails to lay down a hard and fast rule, we are of the opinion that the court should not do so. To us, a fair construction of the statute seems to be that if the fiduciary sells property, of whatever kind, he is generally entitled to a commission of five per cent on the receipts. If he has the right to sell, but those entitled to the proceeds of sale prefer to take the property in kind, then he is generally entitled to receive five per cent commission upon the appraised value of the property. If he is not entitled to sell the property, but must deliver in kind (except in the case of a specific legacy), he is only entitled to a

reasonable compensation to be fixed by the commis-
sioner, or court, upon the proper proof of the expense
incurred, the risk taken, and the services rendered in
connection with the property so delivered to those en-
titled thereto.

[8] The next assignment of error is that the court
should have directed that the executors be charged
with interest on the moneys in their hands from the
receipt to the time of the disbursement.

This contention is disposed of by the trial court as
follows: "It seems to me that considering the circum-
stances under which the legatees received the shares of
stock, delivered to them at a later date than was anti-
cipated, the dividend paid before actual transfer of the
stock might very well have been allowed to the legatees
instead of debiting the amount of dividend as improp-
erly paid, as was done in the individual legatee accounts.

"This, however, seems to have been technically cor-
rect, and I do not think this court should undertake to
overrule the commissioner of accounts who by personal
interviews with the parties was enabled to become ac-
quainted with all the facts bearing upon this charge.
I will, therefore, not interfere with the judgment of the
local commissioner as to this matter."

[9] The action of the trial court is correct.

The last assignment of error is that the court should
have directed that the interest charged to the legatees
in the settlement of the legatee accounts be credited to
the estate and not be given to the executors.

In disposing of this assignment, we adopt the opinion
of the learned trial court on this question, which is as
follows:

"Complaint is made by the complainant that the
interest items on the dividends just mentioned, charged
as 'due Exors.' in the individual accounts with the

legatees, should have been credited to the estate. This could not well have been done in the individual accounts between the executors and the legatees. But in such of the individual accounts as contain these interest items there is a balance against the legatees found as of January 21, 1922, as 'by amount due by you to executors.' The general account between the executors and the estate is settled as of January 10, 1922. I take it, therefore, that in the subsequent settlement of accounts with the estate, the executors will charge themselves with these balances when paid by the individual legatees, unless aggregate items in the general account already cover the items in the individual accounts."

[10] For the reasons given, we are of the opinion that so much of the decree complained of as allows the executors five per cent commissions on the sum of $56,471.42, as shown by the account, should be affirmed, and so much of said decree as allows the executors five per cent upon the appraised value of the stock distributed in kind should be reversed; and the cause is remanded to the trial court to ascertain what would be a reasonable compensation to the appellees for the expense incurred, the risk taken and the services rendered in connection with the receipt and distribution of the shares of stock so delivered to the parties entitled thereto under the provisions of the will of William Henry Jones.

The appellants substantially prevailing, they will be awarded their costs in this behalf expended.

*Affirmed in part; reversed in part.*